IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| UNITED STATES OF AMERICA, | |
|---|---|
| Plaintiff, | 4:15CR3002 |
| vs. | |
| GARY WILSON, | FINDINGS, RECOMMENDATION, AND ORDERS |
| Defendant. | |

Defendant is charged with Possession Of Unregistered Firearms (Destructive Devices) in violation of 26 U.S.C §§ 5841, 5861(d) & 5871, and with Possession Of Firearms By Prohibited Person in violation of 18 U.S.C. § 922(g)(1) & 924(a)(2). Defendant moves to:

1) change the trial location to North Platte, (Filing No. 39);

2) dismiss Count II of the indictment, (Filing No. 41); and

3) suppress all evidence found during a search of residential properties (and associated outbuildings) conducted on December 17, 2014, (Filing No. 43).

For the reasons explained below, the motion to dismiss and motion to suppress will be denied, and the case will be transferred to the North Platte trial docket.

MOTION TO SUPPRESS
(Filing No. 43)

On December 11, 2014, the undersigned magistrate judge signed warrants to search Defendant's residence at 120 S. Carr Avenue, North Platte, NE, to include residence and attached garage and two storage sheds in the back yard to the west of the residence, (4:14MJ3074), and the residence at 407 E. 9th Street, North Platte, NE, to include the

residence, attached garage, and any locked or open trailers located on the property, ([4:14MJ3075](4:14MJ3075)).

Defendant claims the warrants to search his properties were invalid because in his application for the warrants, affiant officer Mark A. Cullinan, Special Agent, Federal Bureau of Investigation (FBI) misrepresented the facts, concealed material facts, and misled the court. Specifically, Defendant argues:

- Although Agent Cullinan states a shed existed at one of Wilson's residences, it was actually a garage.

- While the affidavit states "Wilson has never been given permission to possess or make explosives or destructive devices," that statement is false. Specifically, Defendant was permitted to possess or make explosives or destructive devices before 1983, but his state permit was revoked in 1983, and his federal explosives license expired shortly thereafter.

- Defendant did not quickly leave when spotted by North Platte police officers at the Platte River Sportsman's Club in October of 2014: Defendant does not know the officers and did not recognize them.

- The warrant application makes only a passing cursory reference to the fact the State of Nebraska granted Defendant's Firearms Permit applications for several years, and that Omaha sent a letter to Defendant in December of 2013 assuring Defendant that he could legally possess firearms.

- The warrant application does not mention that Chad Hall, who provided a statement included in the application, has a significant criminal history. Defendant argues the failure to mention this criminal history, or any information about benefits, inducements, or immunity received by Hall for providing the information, skewed the court's impression and review of the application

([Filing No. 44](Filing No. 44)).

A warrant affidavit is considered presumptively valid. Franks v. Delaware, 438 U.S. 154, 171 (1978). As such, when a defendant challenges a warrant application, a hearing is not required unless the defendant makes a threshold showing that the affiant deliberately misled the judge, and had the judge known the truth, the application would have been denied for lack of probable cause.

> [T]he challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained.

Id. Even assuming the defendant shows information within the application was false, or that material information was omitted, a defendant is not entitled to a hearing unless he first shows that the warrant application, corrected to remove allegedly false information and to include allegedly concealed material facts, would not have supported a finding of probable cause. Id. at 170; United States v. Frazier, 280 F.3d 835, 845 (8th Cir. 2002).

The affidavits supporting the warrants for the two North Platte properties were identical and signed by Mark A. Cullinan, Special Agent, Federal Bureau of Investigation (FBI). After correcting the affidavits to remove allegedly false information, and including allegedly concealed material facts, those affidavits state:

> Beginning in February of 2012, the FBI began investigating whether the defendant was committing the crime of being a felon in possession of a firearm. Defendant's criminal history includes a 1983 conviction for possession of a machine gun, a Class IV Felony. Defendant was sentenced to two years of probation. (4:14MJ3074, Filing No. 1, at CM/ECF p. 13). As stated in court documents attached to the warrant applications, after Defendant

successfully completed his probation, the sentencing judge ordered that "the defendant's probation is hereby terminated and the conviction of the above-captioned defendant [is] nullified," and "all civil disabilities and disqualifications imposed as a result of the conviction [are] removed the same as though a pardon had been issued." (4:14MJ3074, Filing No. 1, at CM/ECF p. 15).

Thereafter, Defendant successfully applied for firearms permits from the State of Nebraska in 1993, 1994, 2000, 2003, and 2010, and from the North Platte Police Department in 1993 and 1994. But due to Defendant's 1983 felony conviction, Defendant's applications to possess explosives and firearms were denied by the Nebraska State Patrol in 1993, by the ATF in 2005, and by the North Platte police in 2006 and in 2008. The Nebraska Board of Pardons sent a letter to Wilson in 2012 which stated the judge's 1985 order "setting aside" Defendant's 1983 conviction did not restore Defendant's right to possess firearms. Thereafter, the North Platte police department revoked Defendant's firearm permit as having been issued in error, and the Board of Pardons denied Defendant's request for a pardon.

On February 22, 2012, the Nebraska State Patrol notified Defendant that he must divest himself of firearms or legal action would be pursued. On February 24, 2012, officers searched Wilson's property at 120 S. Carr Avenue and at 407 E. 9th Street and found a .22 rifle, a stash of ammunition for pistols, rifles and shotguns, weapon parts, shooting accessories, and the precursor chemicals for manufacturing commercial and improvised explosives.

Wilson gave the majority of the guns in his possession to his step-father before the case was presented to the Lincoln County Attorney's Office (North Platte, Nebraska) for prosecution.

In 2013, the Omaha Police Department sent a letter to Defendant stating Defendant could legally possess firearms.

In January of 2013, during the investigation of a series of burglaries committed by Chad Hall (Defendant's nephew), law enforcement officers found a cache of rifles, shotguns and handguns owned by Defendant in a safe

4

at his step-father's home. Hall told law enforcement officers that Defendant stored guns in the step-father's safe presumably to avoid seizure by law enforcement. Hall has an extensive criminal history and may (or may not[1]) have received a better plea deal, or some benefit or immunity, in exchange for providing information about the Defendant to law enforcement officers. On July 23, 2014, Defendant explained that he had owned the guns found in his step-father's safe, but they were given to his step-father.

Defendant went to a COOP in Gothenburg, Nebraska in March of 2014, and asked about purchasing ammonium nitrate for ice melt. According to the COOP employee, Defendant stated the Boston bombers could have caused a lot more deaths had they used ammonium nitrate in their explosives.

Video surveillance footage from the Wal-Mart store in North Platte was reviewed by Agent Cullinan and showed Defendant purchasing ammunition between April 27, 2014 and May 23, 2014. The store's receipts and records revealed Defendant purchased 9mm Lugar cartridges on May 2, 2014, and he made several purchases of .22 caliber Long Rifle ammunition during that one-month time frame.

On June 2, 2014, a member of the Platte River Sportsman's Club handed photographs to Agent Cullinan which were taken on October 16, 2012. These photographs showed Defendant firing mortars—projectiles which exploded upon impact downrange.

Based on the affiant officer's observations and trash pulls, Defendant was using the 120 S. Carr Avenue address as his primary residence when the warrant application was submitted to the court. Expended ammunition and the May 2014 issue of the "Evaluation Engineering" magazine addressed to

---

[1] Although defendant bears the burden of proof on this <u>Franks</u> motion, he has submitted no evidence showing Chad Hall received anything in exchange for his information about Defendant. But even assuming he had presented such evidence, the motion to suppress should still be denied.

"GARY WILSON -OWNER WILSON EXPLOSIVES CONSLT" were also found in the trash at 120 S. Carr Avenue.

Defendant's driver's license lists 407 E. 9th Street, North Platte, Nebraska as Defendant's address. A neighbor at that location stated Defendant uses the 407 E. 9th Street residence as an office for Defendant's rental property business. A red 1992 Mercury Grand Marquis owned by Defendant was parked at the residence from April of 2014 until at least December 2, 2014. Looking through the vehicle's windows from the outside, the affiant officer saw shooting targets and target stands.

North Platte police officers saw Defendant at the Platte River Sportsman's Club firearms shooting range in October and November of 2014. On at least part of those occasions, Defendant used the alias "L. Owens" rather than his real name when signing in at the range.

An employee at the Menards store in North Platte reported suspicious activity by a customer on November 5, 2014. The customer purchased lye drain cleaner, sulfur drain cleaner, and a large amount of copper pipe fittings, consistent with the manufacture of improvised explosives. The customer description provided by the store employee matched, and was later confirmed to be, the defendant.

On the afternoon of December 2, 2014, an NSP investigator saw Defendant setting up and preparing to fire a mortar system at the range. The NSP investigator confronted Defendant about possessing explosives, video recorded Defendant's conduct using his cell phone, and provided that recording to Agent Cullinan for his review.

Before 1983, Defendant had a permit to possess or make explosives or destructive devices. Defendant's state permit was revoked in 1983, and his federal explosives license expired shortly thereafter.

As of December 9, 2014, there Defendant had never registered any firearms or destructive devices on the National Firearms Registration & Transfer Record, had not paid any required tax for lawful manufacture or

possession of Title 26 firearms and/or destructive devices, and had not applied to the Secretary of the Treasury for permission to make or possess such devices.

A judicial officer presented with a warrant application must consider the "totality of the circumstances" to determine if probable cause exists to justify issuing a search warrant. Illinois v. Gates, 462 U.S. 213, 230 (1983). "Probable cause to issue a search warrant exists when an affidavit [or testimony] in support of the warrant sets forth sufficient facts to establish that there is a 'fair probability that contraband or evidence of' criminal activity will be found in the particular place to be searched." United States v. Proell, 485 F.3d 427, 430 (8th Cir. 2007) (quoting United States v. Davis, 471 F.3d 938, 946 (8th Cir. 2006) (quoting Gates, 462 U.S. at 238). The court must "'make a practical, common-sense decision' of whether, given all the circumstances set forth in the warrant application, there is a fair probability that evidence of a crime will be found in a particular place." Gates, 462 U.S. at 238 (quoting Jones v. United States, 362 U.S. 257, 271 (1960)); United States v. Horn, 187 F.3d 781, 786 (8th Cir. 1999)(quoting Gates, 462 U.S. at 238)).

Independent of any alleged misrepresentations or concealments as outlined by Defendant, Agent Cullinan saw video evidence that Defendant was purchasing ammunition at the local Wal-Mart, and preparing to shoot mortars at a firing range. He reviewed Wal-Mart receipts of the ammunition purchases, and found spent ammunition in a trash pull at 120 S. Carr Avenue along with a magazine addressed to Defendant as an "Explosives Consultant." Shooting targets and target stands were being stored in the vehicle parked at 407 E. 9th Street. A Menards employee reported Defendant's purchases of chemicals and copper tubing indicative of manufacturing an explosive device, and a COOP employee reported statements made by Defendant regarding using ammonium nitrate to manufacture a more lethal explosive. And all this occurred after Defendant was notified by the State Pardons Board, the Nebraska State Patrol, and the North Platte police that Defendant could

7

not legally possess firearms, and after Defendant's property was searched in 2012, with officers uncovering a substantial assortment and amount of firearms, ammunition, and materials for manufacturing and delivering explosives.

The question of whether a building was a shed or a garage is not material to the question of whether there was probable cause to believe it contained evidence that Defendant possessed weapons or explosives. In light of the numerous and independent sources of information, even if Hall's statement was disregarded in its entirety, there was probable cause to issue the warrants. Succinctly stated, even after correcting the warrant application as suggested by Defendant, the undersigned magistrate judge finds the warrant applications submitted by Agent Cullinan provided ample support for a finding of probable cause to search of the residences at 120 S. Carr Avenue and 407 E. 9th Street in North Platte, Nebraska, along with any garages, sheds, and trailers located at these property addresses.

Defendant has failed to makes a threshold showing that Agent Cullinan's affidavit was deliberately misleading and that, had the court known the truth, his search warrant applications would have been denied for lack of probable cause. A <u>Franks</u> hearing is not required. Defendant's motion to suppress should be denied.

MOTION TO DISMISS
COUNT II
([Filing No. 41](#))

The defendant was indicted on January 21, 2015. Count II of that indictment alleges:

> On or about December 17, 2014, in the District of Nebraska the defendant Gary Wilson, having previously been convicted of a crime punishable by imprisonment for a term exceeding one year, to wit: possession of a machine gun in the District Court of Douglas County, Nebraska, on May 18, 1983,

>knowingly possessed firearms and ammunition which had been shipped and transported in interstate commerce . . . [i]n violation of Title 18 United States Code, Sections 922(g)(l) and 924(a)(2).

(Filing No. 14, at CM/ECF p. 2). The defendant argues Count II must be dismissed because the defendant's prior felony conviction was set aside, and even if it was not, "the government is estopped from prosecuting him in this case as he was entrapped to commit the crime alleged in Count II." (Filing No. 42, at CM/ECF p. 4).

Defendant claims the government cannot prove an essential element of the government's case: the existence of a prior conviction. Defendant argues his conviction was expunged for the purposes of 18 U.S.C. §992(g)(1) by the order of his Douglas County sentencing judge which stated: "[D]efendant's probation is hereby terminated and the conviction of the above-captioned defendant [is] nullified," and "all civil disabilities and disqualifications imposed as a result of the conviction [are] removed the same as though a pardon had been issued." (4:14MJ3074, Filing No. 1, at CM/ECF p. 15).

As applied to 18 U.S.C. § 922(g), "[a]ny conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction . . . unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms." 18 U.S.C. § 921(a)(20). A prior conviction is "determined in accordance with the law of the jurisdiction in which the proceedings were held." 18 U.S.C. § 921(a)(20).

For purposes of prosecution under 18 U.S.C. 922(g)(1), a determination of what constitutes a "prior conviction" and whether the restoration of civil rights nullifies that conviction, is determined under the law of the convicting jurisdiction. Beeham v. United States, 511 U.S. 368 (1994); DeRoo v. United States, 223 F.3d 919, 925 (8th Cir 2000). Where, as in this case, the "prior conviction" was from a state court, if that state court

restored the defendant's civil rights, the defendant cannot be subject to the federal prohibition against firearm possession unless the state expressly excluded possession of firearms from the civil rights restoration. United States v. Benning, 248 F.3d 772, 776 (8th Cir. 2001); United States v. Wind, 986 F.2d 1248, 1250 (8th Cir. 1993).

The question currently before the court is whether the 1985 order of the Douglas County judge served to restore Defendant's right to possess a firearm. Under Nebraska law, "a felon's right to possess a firearm may only be restored through the Nebraska Governor's express authorization." United States v. Sianis, 275 F.3d 731, 734-35 (8th Cir. 2002) (citing Neb. Rev. Stat. § 83–1,130; Nebraska v. Illig, 237 Neb. 598, 467 N.W.2d 375, 384 (1991)). The Nebraska Governor never restored Defendant's right to possess a firearm. In response to the Defendant's request for a pardon, the Nebraska Board of Pardons advised Wilson in 2012 that the set aside of his conviction did not restore his right to possess firearms. His hearing on that denial was denied. (4:14MJ3074, Filing No. 1 at CM/ECF p. 3). See also, United States v. Germaine, 720 F.2d 998, 999 (8th Cir.1983) (holding that a Nebraska statue allowing expunction of a felony by court order did not nullify the conviction for purposes of federal firearms statute).

The defendant did not receive a pardon for his 1983 conviction, nor authorization from the Nebraska governor to possess a firearm. Count II is not subject to dismissal for lack of any evidence of a prior felony conviction.

Defendant claims that he was entrapped by state and local law officials who either granted his firearm applications or informed him that he could possess a firearm. One such assurance, by the City of Omaha, was received after Defendant was advised by the Board of Pardons that his right to possess a firearm had not been restored. Defendant claims Count II must be dismissed due to entrapment.

Entrapment is an affirmative defense with two elements: 1) government inducement of the crime; and 2) Defendant's lack of predisposition to engage in the criminal conduct. United States v. Abumayyaleh, 530 F.3d 641, 646 (8th Cir. 2008). Defendant carries the initial burden of presenting some evidence that he was induced by government agents to commit the offense. Id.

"The defense of entrapment by estoppel applies only 'when an official assures a defendant that certain conduct is legal, and the defendant reasonably relies on that advice and continues or initiates the conduct.'" United States v. Kieffer, 621 F.3d 825, 833 (8th Cir. 2010). Where the defendant is facing federal charges, "[s]tatements made by a person who is not a federal government official cannot establish the defense of entrapment by estoppel." United States v. Clark, 986 F.2d 65, 69 (4th Cir. 1993). The question of entrapment is generally for the jury to decide. Abumayyaleh, 530 F.3d at 646.

Even assuming entrapment could be raised as a basis for dismissal,[2] Defendant has presented no evidence that any federal officer misrepresented or misinformed the defendant concerning his right to possess a firearm. At most, the record reflects a jury question on whether misinformation from anyone, federal or otherwise, lulled the Defendant into believing he could lawfully possess firearms. Count II is not subject to dismissal based on Defendant's claim of entrapment.

## MOTION FOR NORTH PLATTE TRIAL
(Filing No. 39)

---

[2] A motion to dismiss challenges the sufficiency of the indictment itself. The indictment must include the elements of the crime asserted by the government. It does not and need not address whether the defendant could assert and prove any affirmative defenses, including entrapment by estoppel.

Defendant has moved to change the location of trial from Lincoln to North Platte pursuant to Rule 18 of the Federal Rules of Criminal Procedure and Nebraska Criminal Rule 18.1. Nebraska Criminal Rule 18.1 provides:

> (a) Initial Request. When filing an indictment or information, the government must request in writing on the indictment or information trial in Omaha or Lincoln. Criminal cases are held in North Platte only upon motion granted by the court. The clerk calendars the case according to the initial request or, if none is made, in the city where the clerk receives the case for filing.
>
> (b) Subsequent Request. A party may file a motion and supporting affidavit for a change of the place of trial after the arraignment and before the scheduling or progression order sets the time for filing pretrial motions.

NeCrimR 18.1.

This federal case was set to be tried in Lincoln, Nebraska. After conducting a detention hearing, the court released the defendant on conditions, including the requirement that he remain in Lincoln County, Nebraska, except as needed for travel to and from the City of Lincoln, Nebraska for court purposes.

The Nebraska federal court has three trial locations: Omaha, Lincoln, and North Platte, Nebraska. North Platte is 227 miles from Lincoln, Nebraska. There is no federal courthouse in North Platte, but the court has access to a courtroom in North Platte. The defendant lives in North Platte, and as reflected in the search warrant applications and indictment, the allegations at issue allegedly occurred there. Most of the trial witnesses live in or near North Platte, Nebraska. The defendant has significant health problems (e.g., heart disease, neuropathy, back pain, recurrent dizziness, etc.) which make travel difficult, and due to recent surgical procedures, he obtains prescriptions and follow-up medical care in North Platte. In addition, Defendant's wife had eye surgery recently and has difficulty seeing for more than a few minutes at a time. Travel to and from a Lincoln trial location will be arduous, expensive and time-consuming for the defendant, his wife and the witnesses.

Upon consideration of evidence presented, this case will be transferred to the North Platte trial docket for the convenience of the witnesses and the defendant. Fed. R. Crim. P 18; United States v. Stanko, 528 F.3d 581, 586 (8th Cir. 2008).

Accordingly,

IT THEREFORE HEREBY IS RECOMMENDED to the Honorable John M. Gerrard, United States District Judge, pursuant to 28 U.S.C. § 636(b), that Defendant's motion to suppress, (Filing No. 43), and his motion to dismiss, (Filing No. 41), be denied.

The defendant is notified that failing to file an objection to this recommendation as provided in the local rules of this court may be held to be a waiver of any right to appeal the court's adoption of the recommendation.

IT IS ORDERED:

1) Defendant's motion, (Filing No. 39), is granted. This case is transferred to the North Platte trial docket.

2) The jury trial of this case is set to commence before John M. Gerrard, United States District Judge, in North Platte, Nebraska, at 9:00 a.m. on **February 8, 2016**, or as soon thereafter as the case may be called, for a duration of five (5) trial days. Jury selection will be held at the commencement of trial.

December 7, 2015.     BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.